UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY KRISE,

        Plaintiff,                             Civil Action No. 18-13084

vs.                                            HON. MARK A. GOLDSMITH

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## OPINION & ORDER
### (i) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 12), (ii) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 13), and (iii) AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION

Plaintiff Tammy Krise appeals the final determination of the Commissioner of Social Security denying her claim for disability insurance benefits and claim for supplemental security income. Both parties have filed summary judgment motions (Dkts. 12, 13), and Krise has filed a response brief (Dkt. 14). For the reasons that follow, Krise's motion for summary judgment is denied, Defendant's motion for summary judgment is granted, and the final decision of the Commissioner is affirmed.

### I.    BACKGROUND

On October 13, 2015, Krise filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on March 1, 2008. Admin. Record ("AR") at 15 (Dkt. 9-2). The claims were denied initially on April 27, 2016. Id. Thereafter, Krise filed a timely request for an administrative hearing, which was held on October 19, 2017, before Administrative Law Judge ("ALJ") Nathan Mellman. Id. Krise, who was represented by attorney Jacob Bender, testified, as did vocational expert ("VE") Grace Gianforte. Id. At the hearing, Krise

amended her alleged onset date to December 24, 2014.  Id.  On March 5, 2018, the ALJ issued a written decision holding that Krise was not disabled.  Id. at 25.  On August 13, 2018, the Appeals Council denied review.  Id. at 1.  Krise filed for judicial review of the final decision on October 2, 2018 (Dkt. 1).

Krise was fifty-three years old at the time of the ALJ hearing.  AR at 72.  She has completed her GED, has completed some college, and has a Michigan Mortgage License.  AR at 226.  She has worked as a baker, cashier/stocker, lead clerk, and orange sorter.  Id.

The ALJ reached his conclusion that Krise was not disabled by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 404.1520(a).  He found that Krise had not engaged in substantial gainful activity from December 24, 2014, through her date last insured of June 30, 2016 (step one).  Krise had done some work for pay during that time, but the earnings did not meet the presumptive levels to amount to substantial gainful activity.  Krise has degenerative disc disease of the cervical, thoracic, and lumbar spines, which is "severe" within the meaning of the Social Security Act (step two).  The ALJ acknowledged that Krise also has obstructive sleep apnea, carpal tunnel syndrome, gastroesophageal reflux disorder ("GERD"), obesity, insomnia, and chronic obstructive pulmonary disease ("COPD").  AR at 18.  The ALJ also determined that none of those impairments alone or in combination met or equaled a listing in the regulations, considering Listing 1.00 (musculoskeletal disorders), including Listing 1.02 (major dysfunction of a joint(s), and Listing 1.04 (disorders of the spine) (step three).

Before proceeding further, the ALJ determined that Krise has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations:

> She can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds.  She can sit, stand, and walk for six hours in a typical eight-hour workday.

> She can push and pull as much as she can lift and carry. However, the claimant also has the following additional limitations: she can occasionally climb ramps and stairs, as well as occasionally crawl, kneel, and stoop; however, she can never climb ladders, ropes, or scaffolds.

AR at 20.

At step four, the ALJ concluded that Krise was able to perform the duties of her past relevant work as a lead clerk, which is work performed at the light exertion work level. In the alternative, at step five, the ALJ found that Krise could perform other jobs that existed in significant numbers in the national economy, including such representative occupations as a clerical stock checker, mail sorter, or cashier. AR at 24-25.

## II. LEGAL STANDARD

Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by the [Administrative Law Judge]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health &Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec. Admin., 530 F. App'x 419, 425 (6th Cir. 2013).

## III. ANALYSIS

Krise makes two arguments in support of her motion. First, she argues that the ALJ erred by assigning little weight to the opinion of Krise's treating physician, Dr. Charan Cheema. Pl. Mot. at 10. Second, she argues that the ALJ erred by mischaracterizing her symptoms in violation of Social Security Ruling ("SSR") 16-3p. Id. at 15. Krise's arguments will be taken in turn.

### A. Treating Physician

Krise argues that the ALJ erred by assigning little weight to the opinion of Krise's treating physician, Dr. Charan Cheema. Pl. Mot. at 10. The treating-physician rule provides for the amount of deference a decision-maker must give to the opinions of a claimant's treating physician. Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009). The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).[1] The treating source's opinion must be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(c)(2).

The ALJ stated the following:

> As for the opinion evidence, Charen Cheema, M.D., completed a medical source statement in September 2017, opining that the claimant can sit less than two of eight hours, stand/walk less than two of eight hours, rarely lift and carry even less than 10 pounds, and use her hands, fingers and arms only 20 percent of a workday. (Exhibit 19F). Dr. Cheema also opined that the claimant would be off task 25 percent or more of a workday, she would be absent more than four days per month, and she is incapable of even 'low stress' work. Although I considered this opinion as that of a treating medical source, I give the opinion little weight. Dr. Cheema

---

[1] Although this regulation was replaced by 20 C.F.R. § 404.1520, it still applies to claims that were, as here, filed before March 27, 2017. 20 C.F.R. § 404.1527.

4

> relies on the claimant's subjective complaints of 10/10 pain; however, the records contain only intermittent complaints of pain. Moreover, the records contain only minimal examination reports completed by Dr. Cheema, including February 2016 and twice in 2017. Notably, recent examination reports contain minimal findings, including a non-antalgic gait, normal muscle tone, no muscle spasm, and normal lower extremity strength bilaterally. (Exhibits 14F/54, 15F/9). Therefore, this opinion is based on limited clinical findings. Additionally, there is no medical evidence of record to support manipulative limitations, sitting limitations, or the need to elevate the lower extremities, as an EMG with nerve conduction velocity studies revealed no abnormalities, including no evidence for a right lower extremity radiculopathy, plexopathy, or neuropathy. (Exhibits 12F/3, 13F/47).

AR at 22-23.

Krise points to three areas that she feels the ALJ's analysis is deficient. She argues that the ALJ erred by (i) stating that Dr. Cheema relied too heavily on Krise's subjective complaints, (ii) finding that Dr. Cheema's opinion is based on limited clinical findings, and (iii) finding that there is no medical evidence of record to support manipulative limitations, sitting limitations, or the need to elevate the lower extremities.

### 1. Subjective Complaints

Krise takes issue with the ALJ's statement that Dr. Cheema relied on Krise's subjective complaints of 10/10 on the medical pain scale, and that the records contain only intermittent complaints of pain. Mot. at 11. Defendant argues that only six of the eleven visits with Dr. Cheema during the relevant time period were focused on pain, and the medical records reflect pain ranging from 3/10 to 10/10. Resp. at 11.[2] Defendant has the better part of the argument.

It is difficult to reconcile Dr. Cheema's September 19, 2017, medical source statement, representing that Krise has lower back pain at a 10/10 most of the time, with the remainder of the record. AR at 640. In older records, noted by Defendant, Krise reported pain ranging from 2/10

---

[2] The relevant time period is from December 24, 2014 (the disability onset date) to March 5, 2018 (the date of the ALJ decision). Additionally, as noted by both parties, Krise erroneously cited AR 430 as a discrete medical visit, but because the medical record lacks a signature, it is not clear whether Dr. Cheema was present for the visit. See Reply at 6 n.2.

to 10/10. Resp. at 12. All but one of the medical records cited by Defendant are from a three-month period from November 2015 through January 2016, see AR at 363-383, all of which predate Dr. Cheema's treatment of Krise, AR at 415. Although these older records alone may be poor indicators of Krise's current pain levels, later records support the same pain levels. On September 19, 2016, Krise reported to Jill Marshall, CNP at a Henry Ford pain clinic, that she has had back pain for five years, and that it fluctuates and is intermittent, AR at 551, 600-601.

With respect to Krise's eleven medical appointments with Dr. Cheema, the Court agrees with Krise that there is evidence that pain was discussed either directly or indirectly in ten out of the eleven appointments. The frequent reports of pain over the course of two years is substantial evidence that Krise's pain was constant rather than intermittent. However, the reports do not necessarily undermine the ALJ's observation that Krise's pain is intermittent where Krise has reported that her pain fluctuates and is intermittent in at least five of the last six years prior to her ALJ hearing. Dr. Cheema's reports do not indicate that Krise's pain had markedly worsened in the year between Krise's pain clinic visit and Dr. Cheema's medical source statement. And even if there were substantial evidence in the record supporting contrary positions, where the ALJ's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip, 25 F.3d at 286. Krise's statement to Marshall in September 2016 that her pain was 6/10 and intermittent, along with the earlier records, is substantial evidence supporting the ALJ's findings and is not inconsistent with the other substantial evidence in the case record.

### 2. Minimal Findings

Krise also takes issue with the ALJ statement that "recent examination reports contain minimal findings, including a non-antalgic gait, normal muscle tone, no muscle spasm, and normal

6

lower extremity strength bilaterally. (Exhibits 13F/54, 15F/9)." Pl. Mot. at 12. She argues that this statement mischaracterizes the record and overstates the relevance of these findings to Krise's condition. Id. Defendant argues that the ALJ reasonably considered the limited objective findings in Dr. Cheema's notes in rejecting her opinion. Def. Mot. at 13. Krise's argument misses the mark.

As Defendant points out correctly, treating physician "opinions are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." Cutlip, 25 F.3d at 287. The essence of Krise's argument is that the ALJ should have relied on the August 2017 report from Dr. Cheema, rather than the earlier report from the pain clinic in September 2016. See Pl. Mot. at 12-13. However, the reports do not undermine the ALJ's statement that the recent reports, whether made immediately before the ALJ's hearing or a year earlier, have minimal findings. Indeed, even the later report by Dr. Cheema has minimal findings. The report notes decreased range of motion in Krise's lower back, but there is no explanation as to whether this has always been the case or whether this is a new development. It appears from the report that there has been a recent change in Krise's medical condition, because Dr. Cheema prescribes a "short course of narcotic pain medication until we figure out what exactly is going on with [Krise's] back and abdomen." AR at 632.

The ALJ's statement that recent records contain minimal findings is supported by substantial evidence.

### 3. Manipulative Limitations, Sitting Limitations, and Elevating Legs

Finally, Krise takes issue with the ALJ's explanation that he found that "[t]here is no medical evidence of record to support manipulative limitations, sitting limitations, or the need to elevate the lower extremities, as an EMG with nerve conduction velocity studies revealed no

7

abnormalities, including no evidence for a right lower extremity radiculopathy, plexopathy or neuropathy." Pl. Mot. at 13. She argues that there is medical evidence in the record to support Dr. Cheema's suggested limitations, such as a November 2016 EMG and a September 2016 MRI. Id. at 13-14. However, neither report weighs in Krise's favor.

In the November 2016 report, Dr. Steven Sherman reviewed the EMG results and found that Krise had "normal lower extremity power and reflexes" and that although there is evidence of "diminished temperature sensation on the right lateral thigh," the EMG "revealed no abnormalities," and that there was "no electrodiagnostic evidence for a right lower extremity radiculopathy, plexopathy, or neuropathy." Id. at 498. He also noted that there was some clinical support for meralgia paresthetica. Id. However, Krise does not provide any evidence establishing that meralgia paresthetica is a diagnosis that warrants a more restrictive RFC.[3] Krise also argues that a normal EMG does not necessarily mean that she does not have any issues with sitting or that she does not need to elevate her legs. Pl. Mot. at 14. That is undoubtedly true, but also beside the point, because the EMG provides substantial evidence to support the ALJ's assessment that there is no medical evidence in the record to support manipulative limitations, sitting limitations, or the need to elevate Krise's lower extremities.

Krise also argues that her abnormal cervical MRI, AR at 658, "arguably" supports manipulative restrictions related to her upper extremities. Pl. Mot. at 14. Krise offers no further explanation on this point, and the Court is unable to glean the argument from the MRI results. The MRI results appear to report mild symptoms, including spondylosis, which Defendant points out is a general term for common age-related wear and tear affecting the spine disks in one's neck.

---

[3] According to the Mayo Clinic's website, "[f]or most people, symptoms of meralgia paresthetica ease in a few months." See https://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/diagnosis-treatment/drc-20355639 (last visited on March 19, 2020).

Def. Mot. at 14. Krise's cervical MRI does not undermine the ALJ's decision to afford Dr. Cheema's opinion little weight.

The Court finds that the ALJ gave good reasons to afford Dr. Cheema's opinion little weight, and the reasons are not inconsistent with the other substantial evidence in the case record.

**B. SSR 16-3P**

Krise argues that the ALJ's analysis of her symptoms is not based on substantial evidence and conflicts with SSR 16-3p. Pl. Mot. at 15. Under SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, which includes, among other things, "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms." SSR 16-3p(2)(d)(4). Krise argues that the ALJ only considered two of the ten medications she has used to control her pain. Id. Defendant argues that the ALJ was cognizant of the numerous medications Krise used in an attempt to control her pain. Def. Mot. at 6. The Court agrees with Defendant.

The ALJ observed that a May 2017 treatment record indicated that Krise "was taking only Ibuprofen 800mg for generalized pain," and that she "later started on only a short course of narcotic pain medication in August 2017." AR at 22. Read in context, the ALJ's statement does not purport to be a complete chronology of all medications Krise has used to control her pain. The ALJ's point was that the pain medication Krise was taking in 2017 for generalized pain suggested milder symptoms. The ALJ's consideration of Krise's medication used in May 2017 does not suggest that the ALJ failed to take Krise's other medications into consideration. Indeed, it is well settled that ALJs are not required to discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). "An ALJ can consider

all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." Id.

It is true that the ALJ did not directly address each, or even most, of Krise's other medications in his written opinion. However, it is clear that the ALJ reviewed Krise's other medications, even if he was not persuaded that they should be discussed in his opinion, because the ALJ addressed and cited each of the records containing the evidence of Krise's multiple medications.

The ALJ conducted a proper examination of the entire record and explained his reasons for reaching his result in the manner prescribed by SSR 16-3p. The ALJ's consideration of the record is supported by substantial evidence and must, therefore, be affirmed.

## IV. CONCLUSION

For the reasons discussed above, Krise's motion for summary judgment (Dkt. 12) is denied, Defendant's motion for summary judgment (Dkt. 13) is granted, and the ALJ's decision is affirmed.

SO ORDERED.

Dated: March 24, 2020  
    Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge